**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROSEMARY TEFFT, Individually and for Others Similarly Situated,<br><br>v.<br><br>INTEGRITUS HEALTHCARE, INC. f/k/a BERKSHIRE HEALTHCARE SYSTEMS, INC. | Case No. 3:23-CV-30037-MGM<br><br>**SUPPLEMENTAL JOINT MOTION REGARDING THE MOTION FOR SETTLEMENT APPROVAL OF AN FLSA COLLECTIVE ACTION** |

**SUPPLEMENTAL JOINT MOTION REGARDING THE MOTION FOR SETTLEMENT APPROVAL OF AN FLSA COLLECTIVE ACTION**

Plaintiff Rosemary Tefft and defendant Integritus Healthcare, Inc. f/k/a Berkshire Healthcare Systems, Inc. (together, the "Parties") respectfully submit this joint motion pursuant to the Court's Order dated October 27, 2025 (Dkt. 29). In response to the Court's Order, the Parties state as follows:

1.      As an initial matter, the Parties are confident that a one-step approval process is appropriate in the instant case. (*See* Dkt. 28-1:13.) As part of this process, Settlement Class Members will each receive a Settlement Award check with their pro-rata portion of the Net Settlement Amount, and they will have the option to execute the Settlement Award check confirming their approval of the Settlement and consenting to become a party to the Lawsuit for purposes of the Settlement. (Dkt. 28-1:15.) If a Class Member does not execute and cash his/her Settlement Award check, then they will not be considered a Settlement Class Member, will not release any claims that they may have against Defendant, and will have the option to bring a separate action. (*Id.*) Allowing Settlement Class Members to participate in the Settlement by the act of negotiating a settlement check provides for comprehensive relief for the Settlement Class Members, because they are not required to fill in and return a written consent form. (*Id.*) The

"cashing-of-the-check" approach for individuals to affirmatively consent to join an FLSA collective action is regarded as one that allows maximum participation by reducing the burden to participate. (*Id.* at 20.) In Plaintiffs' counsel's experience, notice accompanied by checks results in a high opt-in rate. (*Id.* at 27.)

    2.    The Parties acknowledge that there may have been some discrepancy between the description of the settlement process contained in the Settlement Agreement and those described in their motion papers. To remedy the same, and to ensure that the one-step approval process discussed above is implemented, the Parties have executed a Revised Settlement Agreement. Redlined and clean versions of that Revised Settlement Agreement are attached as Exhibits A and B hereto, respectively.  In accordance with that Revised Settlement Agreement, the Parties propose the following:

    a.    The Parties propose that the Court execute the Proposed Order (Dkt. 28-3), which will be considered the "Final Approval Order" or "Approval Order" for the purposes of the original Settlement Agreement (Dkt. 28-2), and the deadlines that run therefrom (*see, e.g.,* Dkt. 28-2:7, Para. 3(E), 3(F)).

    i.    The filings at Dkt. 28, 28-1, 28-2, and 28-3 will replace the filings contemplated by Para. 4(A) of the original Settlement Agreement (*see* Dkt. 28-2:7).

    ii.    Given the Parties' agreement within the filings at Dkt. 28, 28-1, 28-2, and 28-3, and as reflected herein, there is no need for a Final Approval Hearing, and the Parties thus strike the reference thereto within Para. 4(A) of the original Settlement Agreement (Dkt. 28-2:7) and strike the "Fairness Hearing and Motion for Final Approval and Dismissal" procedure discussed in Para. 4(C) of the original Settlement Agreement (Dkt. 28-2:8).

iii.     In lieu of referencing "preliminary approval" within the Settlement Agreement, the Parties will refer instead to the "Approval" process (*e.g.*, Dkt. 28-2:7-8, 10, Para. 4(A), 4(B), Para. 5(A)).

iv.     Given the Parties' agreement reflected in the terms of the Proposed Order within Dkt. 28-3:2, Para. 6, specifically that "this case and all claims asserted in this case…are DISMISSED WITH PREJUDICE, with each Party to bear its own costs, and with the Parties waiving all rights to appeal" upon the Court's execution of the Proposed Order, the Parties will strike Para. 4(E) of the original Settlement Agreement (Dkt. 28-2:9). Relatedly, the Parties will strike the clause in Para. 2 of the original Settlement Agreement, which reads, "Upon entry of final approval on this Agreement by the Court ("Final Approval Order")…all Parties, through their counsel of record in this matter, agree to file a stipulation for dismissal of the Lawsuit, with prejudice, with the Court ("Stipulation for Dismissal")." (Dkt. 28-2:2.) The Parties likewise agree to strike Recital No. 9[1] of the original Settlement Agreement. (*Id.*)

2.     **WHEREFORE**, the Parties would be happy to submit additional briefing and/or address further questions of this Honorable Court.

---

[1] Recital 9 reads, "WHEREAS, the Parties agree that the Final Effective Date of this Agreement shall be thirty-five days after the Court has entered a Final Approval Order, as defined herein (the "Final Effective Date"), provided the time to appeal from the Final Approval Order has expired and no notice of appeal has been filed. In the event a notice of appeal is filed, the "Final Effective Date" shall be the latest of the following: (1) the date any appeal from the Final Approval Order has been finally dismissed; (2) the date the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; and/or (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Approval Order in a form substantially identical (i.e., including identical payment obligations and procedures, releases, and other material terms) to the form of the Final Approval Order entered by the Court…"

Date: November 14, 2025

Respectfully submitted,

| | |
|---|---|
| /s/ Michael A. Josephson | /s/ Vanessa M. Cohn |
| Philip J. Gordon (Mass. BBO# 630989) | Christopher B. Kaczmarek (Mass. BBO# 647085) |
| Kristen M. Hurley (Mass. BBO# 658237) | Vanessa M. Cohn (Mass. BBO# 691192) |
| **GORDON LAW GROUP LLP** | **LITTLER MENDELSON P.C.** |
| 585 Boylston Street | One International Place, Suite 2700 |
| Boston, Massachusetts 02116 | Boston, Massachusetts 02110 |
| Tel: (617) 536-1800 | Tel: (617) 378-6000 |
| Fax: (617) 536-1802 | Fax: (617) 737-0052 |
| pgordon@gordonllp.com | ckaczmarek@littler.com |
| khurley@gordonllp.com | vcohn@littler.com |

Michael A. Josephson (*Pro Hac Vice*)          *Counsel for Defendant*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com

*Counsel for Plaintiffs*

### CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2025, a true and correct copy of the foregoing document was served by ECF electronic filing on all known parties in accordance with Fed. R. Civ. P. 5.

/s/ Michael Josephson
Michael Josephson

Exhibit A

**GLOBAL SETTLEMENT AGREEMENT AND RELEASE**

**THIS GLOBAL SETTLEMENT AGREEMENT AND RELEASE** ("Agreement") is made and entered into by and among Rosemary Tefft ("Tefft" and/or "Plaintiff"), on behalf of herself and all individuals similarly situated (collectively, the "Employees" of the "Putative Class" as further defined below, and referred to herein on occasion as "Putative Class Members"), and Integritus Healthcare, LLC f/k/a Berkshire Healthcare Systems, Inc. ("Integritus" or "Defendant"), on behalf of themselves and their parents, subsidiaries, affiliates, business units, members, shareholders, and their predecessors and successors, insurers, officers, directors, agents, attorneys, employees, and assigns. Plaintiff, together with the Putative Class Members and the Defendant, are each referred to hereinafter as a "Party" and collectively as the "Parties" in this Agreement.

**RECITALS**

**WHEREAS,** Plaintiff, on behalf of herself and others similarly situated, instituted a civil action against Defendant, captioned *Tefft, et al. v. Integritus Healthcare, LLC, et al.*, Case No. 3:23-CV-30037-MGM, in the United States District Court for the District of Massachusetts, on April 3, 2023 (the "Complaint"). Plaintiff's Complaint was a purported class and collective action brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and Massachusetts wage-and-hour laws ("Wage Act"), M.G.L. c. 151, §§ 1A, *et seq.*; and,

**WHEREAS,** on June 22, 2023, Plaintiff amended the Complaint ("Amended Complaint"). The operative Amended Complaint is a purported class and collective action that brings one count for violation of the FLSA and one count for violation of the Wage Act to recover allegedly unpaid overtime owed to Plaintiff and to similarly situated employees, based on an alleged failure to properly include shift premiums when calculating employees' regular hourly rate(s) of pay (the "Lawsuit"); and,

**WHEREAS,** the Putative Class Members that Plaintiff seeks to represent in the Lawsuit includes 304 current and former individuals who worked at Integritus's affiliate, Charlene Manor Extended Care, during the three-year period preceding the filing of the Lawsuit on April 3, 2020, through May 31, 2023; and,

**WHEREAS,** Defendant denies the allegations in Plaintiff's lawsuit in their entirety, denies liability in its entirety, and denies that any class is capable of being certified in this Lawsuit; and,

**WHEREAS,** the Parties recognize that there is a *bona fide* dispute as to the back pay and/or liquidated damages owed, if any, in connection with the claims alleged in the Lawsuit, and if owed, whether any alleged underlying violation of the Fair Labor Standards Act ("FLSA") giving rise to such damages would be considered by the Court to be "willful"; and,

**WHEREAS,** the Parties wish to avoid the disruption and expense of litigation; and,

**WHEREAS,** the Parties attended mediation with Lynn Cohn on March 26, 2024, after an exchange of significant informal discovery, in a good faith effort to negotiate a resolution of the Lawsuit, and ultimately agreed to a resolution of the Lawsuit on the terms and conditions set forth in this Agreement (the "Settlement"); and,

4865-6503-7505.2 / 105098-1004
Error! Unknown document property name.4926-3955-5960.1 / 105098.1004
Error! Unknown document property name.11/6/2025 4:12 PM

**WHEREAS**, Josephson Dunlap, LLP, and Bruckner Burch, PLLC, counsel for Plaintiff and, subject to Court approval ("Approval"), for the Putative Class Members ("***Class Counsel***"), has analyzed and evaluated the merits of the claims made against the Defendant and the impact of this Agreement on Plaintiff and the Putative Class Members, including, without limitation, based upon data, including payroll and other records, provided to Class Counsel by Defendant, and based upon Class Counsel's analysis and evaluation of a number of other factors. Recognizing the substantial risks of continued litigation, including the possibility that the Lawsuit, if not settled now, might result in no recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Plaintiff and the Putative Class Members; and,

~~**WHEREAS**, the Parties agree that the Final Effective Date of this Agreement shall be thirty-five days after the Court has entered a Final Approval Order, as defined herein (the "Final Effective Date"), provided the time to appeal from the Final Approval Order has expired and no notice of appeal has been filed. In the event a notice of appeal is filed, the "Final Effective Date" shall be the latest of the following: (1) the date any appeal from the Final Approval Order has been finally dismissed; (2) the date the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; and/or (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Approval Order in a form substantially identical (*i.e.*, including identical payment obligations and procedures, releases, and other material terms) to the form of the Final Approval Order entered by the Court; and,~~

**NOW, THEREFORE,** in consideration of the premises and mutual promises contained herein, it is agreed as follows:

1.    <u>Non-Admission of Liability</u>. This Agreement is not an admission of any wrongdoing by any Party, nor shall it be interpreted or construed to be an admission of any wrongdoing by any Party. By entering into this Agreement, Defendant does not admit to any wrongdoing or violation of federal or state statutes or regulations of any kind, or that Defendant is liable for any of the amounts sought by Plaintiff in the Lawsuit, and expressly denies the same. Plaintiff and the Putative Class Members understand and acknowledge the foregoing, and the Parties further agree that the instant Agreement is not evidence of, and may not be used as evidence of liability, a violation of law or other wrongdoing, or an admission of same, by Defendant. Rather, the Parties have entered into this Agreement for the sole purpose of resolving the Lawsuit and all possible claims at issue at this time (as defined in Section 2, below) and to avoid the burden, expense, delay, and uncertainties of litigation.

2.    <u>Release of Claims</u>. ~~Upon entry of final approval on this Agreement by the Court ("Final Approval Order"), and upon remittance of settlement payments to all participating Putative Class Members, all Parties, through their counsel of record in this matter, agree to file a stipulation for dismissal of the Lawsuit, with prejudice, with the Court ("Stipulation for Dismissal").~~

4865-6503-7505.2 / 105098-1004
**Error! Unknown document property name.**~~4926-3955-5960.1 / 105098.1004~~
**Error! Unknown document property name.**~~11/6/2025 4:12 PM~~

Settlement Agreement & Release
Page 3 of 14

Upon issuance of the ~~Final~~ Approval Order, and except as to such rights or claims as may be specifically created by this Agreement, by endorsing their Settlement Check, Plaintiff and each Putative Class Member, on their behalf, and on behalf of their respective current, former, and future heirs, executors, administrators, agents, attorneys, successors, and assigns, fully releases and discharges Defendant, and each of their respective parents, subsidiaries and affiliates, and each of their respective shareholders, members, officers, directors, employees, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them, solely in their capacity as such (collectively, the "***Releasees***"), from any and all claims for any wage and hour violations, including without limitation, concerning any and all claims for unpaid working time, wages, minimum wages, overtime, off-the-clock work, time rounding, and related claims that were or could have been asserted against any of the Releasees and/or were asserted in the Lawsuit, any and all claims for unpaid overtime allegedly owed to Plaintiff and to similarly situated employees, based on an alleged failure to properly include shift premiums when calculating employees' regular hourly rate(s) of pay, and any and all claims relating thereto or arising therefrom, including without limitation any and all claims for unpaid time, by Plaintiff and each Putative Class Member under federal law, including without limitation the FLSA, 29 U.S.C. §§ 201 *et seq.*, and its related rules and regulations, Massachusetts state and/or local law, including without limitation claims arising under the Massachusetts Wage Act, M.G.L. c. 149 § 148 *et seq.*, and the Massachusetts Minimum Fair Wage Law, M.G.L. c. 151 § 1 *et seq.*, M.G.L. 151 § 1A, *et seq.*, and M.G.L. 151 § 1B, *et seq.*, and any supporting or related laws, statutes, rules or regulations, from April 3, 2020, through entry of the ~~Final~~ Approval Order. This Release includes all claims for all damages arising from any such released claims, including without limitation claims for liquidated damages, penalties, interest, and attorneys' fees and costs. Released claims include any and all manner of actions, causes of action, suits, accounts, claims, demands, controversies, judgments, obligations, damages and liabilities of any nature whatsoever, under federal, state or local laws, whether or not now known, suspected or claimed, that were asserted, or could have been asserted by the Putative Class Members in this Lawsuit, that in any way relate to or arise out of the conduct alleged in the Complaint filed by Plaintiffs in the Lawsuit or similar conduct, wherever it may have occurred.

Participating Putative Class Members also knowingly and voluntarily do hereby fully, finally, irrevocably, and forever unconditionally release, acquit, and discharge Defendant of and from any and all wage and hour complaints, wage and hour claims, wage and hour demands, wage and hour liabilities, wage and hour obligations, wage and hour promises, wage and hour agreements, wage and hour controversies, wage and hour action, wage and hour causes of action, wage and hour suits, wage and hour rights, wage and hour damages, wage and hour costs, wage and hour losses, wage and hour debts, wage and hour accounts, wage and hour charges, and wage and hour expenses (including attorney's fees and costs actually incurred), whether in law or in equity, both known and unknown, which arose before the ~~Final  Effective~~Approval Date of this Agreement which they might otherwise have against Defendants regarding any aspect of their employment with Defendant.

      3.    <u>Settlement Payments</u>.

4865-6503-7505.2 / 105098-1004
Error! Unknown document property name.4926-3955-5960.1 / 105098.1004
Error! Unknown document property name.11/6/2025 4:12 PM

Settlement Agreement & Release
Page 4 of 14

A.    Settlement Fund. As consideration for this Agreement, the releases set forth in Section 2 above, and in full and final settlement of any claims, damages, attorney's fees and costs which were made by Plaintiff, and on behalf of the Putative Class Members in the Lawsuit, the Defendant shall pay Ninety Five Thousand dollars and no/100 cents ($95,000.00) (the "Settlement Fund").

The Settlement Fund shall be allocated as follows:

i)    Two Thousand Five Hundred dollars and no/100 ($2,500.00) representing an incentive payment to Rosemary Tefft;

ii)    Thirty Eight Thousand dollars and Zero/100 cents ($38,000.00) representing the attorney's fees payable to Class Counsel;

iii)    Five Thousand Five Hundred Dollars and Zero/100 cents ($5,500.00) representing case expenses payable to Class Counsel;

iv)    Any and all fees and costs associated with the retention of and provision of services by ILYM, a settlement administrator, agreed by the Parties at mediation to administer the Settlement Fund ("Settlement Administrator");

(v)    The remaining balance (the "Net Settlement Amount") representing the amount to be paid to each of the Putative Class Members (including Plaintiff) according to the apportionment/schedule attached hereto as **Exhibit A**. A list of the identities and last-known contact information (including the last-known mailing address, last-known telephone number, and last-known email address(es), where available) for the Putative Class Members, and the funds for the corresponding checks ("Settlement Checks") for payment to such Putative Class Members, shall be sent to Settlement Administrator, for distribution to the participating Putative Class Members within forty-five (45) days of the Court's approval of the settlement. Plaintiffs' Counsel shall likewise issue the attached Notice with each check, the form and template of which is attached as Exhibit B.

The minimum individual settlement recovery for any Settlement Member will be $20.00. This means that for any Settlement Member whose individual damages calculation is less than $20.00, or whose *pro rata* share of the Net Settlement Amount would result in receiving an amount less than $20.00, the minimum amount any such Settlement Member will receive if they choose to participate in the Settlement will be at least $20.00.

The apportionment/schedule set forth in **Exhibit A** has been prepared by counsel for the Plaintiff and putative class members, and the apportionment therein is requested by counsel for the Plaintiff and putative class members. Integritus and its counsel make no representations as to the calculations giving rise to and/or content set forth in **Exhibit A.**

> **Commented [1]:** This language has been moved from the addendum into the text of the revised agreement.

B.    Settlement Checks. The Settlement Administrator shall be responsible for

4865-6503-7505.2 / 105098-1004
Error! Unknown document property name.4926-3955-5960.1 / 105098.1004
Error! Unknown document property name.11/6/2025 4:12 PM

Settlement Agreement & Release
Page 5 of 14

distributing the agreed-upon Notice and settlement checks to Plaintiff and each of the participating Putative Class Members. A release containing agreed-upon language shall be identified on the back of each check distributed to the participating Putative Class Members. Execution of their settlement check by each of the participating Putative Class Members will render them as participating in the settlement and shall release their claims as stated herein, subject to clearing of funds furnished by Defendant. If any Putative Class Member does not execute a settlement check containing the release language below (or words to similar effect in the event that such is not administratively feasible), such Employee will not participate in the settlement, shall receive no settlement funds, and shall not release any claims hereunder.

On the stub attached to each check distributed to each of the Putative Class Members pursuant to this Agreement, the following language will appear at or below the endorsement section (or words to similar effect in the event that such is not administratively feasible):

### RELEASE OF CLAIMS:

By endorsing and negotiating this check and accepting payment, (a) I fully accept and agree to opt-in to the Settlement Class in the case titled *Tefft, et al. v. Integritus Healthcare, LLC et al.*, Case No. 3:23-CV-30037-MGM, (b) I may review a copy of the Settlement Agreement and I represent that I have done to the extent so desired, (c) I agree to be bound by the terms and conditions of the Settlement Agreement entered into and executed by Plaintiff, Rosemary Tefft, the class/collective representative, on my behalf, and (d) I release the Releasees (as defined in the Settlement Agreement) from all wage and hour claims under the Fair Labor Standards Act, the Massachusetts Wage Act, the Massachusetts Minimum Fair Wage Law, and/or any other applicable wage and hour law, rule or regulation brought, or which could have been brought, in *Tefft*, including my release of claims contained in that Settlement Agreement.

The participating Putative Class Members shall have 120 days from the date the Settlement Administrator distributes the Notice and checks to cash or negotiate the checks. Any modification or amendment of the endorsement language set forth on the stub attached to a Settlement Check by a Putative Class Member will be invalid and will not be accepted. Any Putative Class Member who does not endorse and/or otherwise cash their Settlement Checks shall be deemed not to have opted into the settlement with respect to any Claims arising under the FLSA and shall retain any rights and remedies such Class Member may have under the FLSA.

The Parties recognize that the Wage Portion of the Settlement Payments to the Putative Class Members will be classified as wages and will be subject to applicable tax withholding and reporting. The Settlement Administrator shall be responsible for withholding and timely remitting and reporting to the appropriate taxing authorities the employee's share of payroll taxes or contributions (*i.e.*, FICA, FUTA, SUTA, and Medicare) from such payments. Subject to the Settlement Administrator's obligation to comply with applicable laws, the Parties anticipate that any amounts designated as the Non-Wage Portions of the Settlement Payments and the Service Awards to the Plaintiffs shall not be subject to withholding and shall be reported to the IRS on

4865-6503-7505.2 / 105098-1004
Error! Unknown document property name.4926-3955-5960.1 / 105098.1004
Error! Unknown document property name.11/6/2025 4:12 PM

Settlement Agreement & Release
Page 6 of 14

Form 1099, as may be required by the IRS. The employer's share of payroll taxes required to be paid by the Defendant shall be paid by the Defendant in addition to the Settlement Fund.

To the extent permissible under Defendants' respective benefit plans, the payments made to Class Members under this Agreement shall not be utilized to calculate any additional benefits under any benefit plans to which any Class Member may be eligible including, but not limited to profit-sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick leave plans, and paid time off plans. Rather, it is the Parties' intention that this Agreement will not affect any rights, contributions, or amounts to which any Class Member may be entitled under any benefit plans.

For any employee who does not participate in the settlement, their apportioned share of settlement funds from the Net Settlement shall revert to Defendant. No other portion of settlement funds shall revert back to Defendant, including Rosemary Tefft's individual recovery and/or incentive payment (if approved by the Court), attorneys' fees, and case expenses as outlined in Paragraph 3(C)-(G), below.

At the expiration of the one hundred twenty (120) day check-cashing period, the Settlement Administrator will inform counsel for the Defendant which checks were negotiated, and which became void, as well as an accounting of the cash value of all amounts reverting to Defendant. In addition to this information, the Settlement Administrator will also provide counsel for the Defendant information regarding the amount of employer-side taxes due on the Wage Portion of the Settlement Payments which were negotiated. Within thirty (30) days of receiving this information from Settlement Administrator, the Defendant shall make an additional payment in the amount calculated by Settlement Administrator. The Defendant also shall have the option of directly paying all employer-side taxes to the respective taxing authorities.

       C.    Settlement Payment to Lead Plaintiff.    Subject to Court approval, and as identified above, Plaintiff will receive a payment of Two Thousand Five Hundred Dollars and Zero Cents ($2,500.00) (the "Service Award") in further consideration of the releases contained herein. This payment is part of the Settlement Fund and shall be provided to the Settlement Administrator for disbursement at the time that the other Settlement Checks are distributed to Class Members, *i.e.*, within forty-five (45) days after the court approves this Agreement, subject to prior receipt of a completed Form W-9 from Plaintiff. The Service Award is in addition to the Settlement Payment that Plaintiff is entitled to receive from the Settlement Fund as a Putative Class Member. Plaintiff will be responsible for correctly characterizing this payment for tax purposes and for paying taxes on any amount received. Neither Defendant, Defendant's Counsel, Plaintiff's Counsel, nor Class Counsel are providing any tax advice to Plaintiff in connection with the Service Award or any other payment.

       D.    Tax Allocation of Putative Class Member Payments.    Settlement Payments to the Settlement Class Members will be allocated as follows for tax purposes: (i) one-half (1/2) in consideration for time worked as back-wage payments and/or wage income subject to W-2 reporting (the "Wage Portion"); and (ii) one-half (1/2) in consideration for statutory penalties, liquidated damages, interest, and all other non-wage recovery subject to 1099 reporting ("Non-

4865-6503-7505.2 / 105098-1004
Error! Unknown document property name.4926-3955-5960.1 / 105098.1004
Error! Unknown document property name.11/6/2025 4:12 PM

Settlement Agreement & Release
Page 7 of 14

Wage Portion"). Class Members are responsible for the proper income tax treatment of the individual Settlement Payments received. Neither the Settlement Administrator, Defendant nor Defendant's Counsel, are providing any tax advice. Accordingly, Putative Class Members should consult with their tax advisors concerning the tax consequences and treatment of any payment they receive hereunder.

       E.    Attorneys' Fees and Costs.  In consideration for the work already performed in this matter and all work remaining to be performed in documenting the Settlement, securing Court approval of the Settlement, and ensuring the Settlement is fairly implemented, the Parties agree that an amount of $38,000.00, exclusive of any out-of-pocket costs and expenses, shall be allocated to Class Counsel for attorneys' fees, subject to Court approval (the "Class Counsel Fees"). The Settlement Administrator shall make these payments to Josephson Dunlap, LLP. The Class Counsel Fees shall be paid from the Settlement Fund within forty-five (45) days after entry of the ~~Final~~ Approval Order. The Settlement Administrator will issue an IRS Form 1099 to Class Counsel, Josephson Dunlap LLP, subject to the Defendant's prior receipt of an appropriate W-9 from Class Counsel.

       F.    Litigation Costs and Expenses.    In consideration for $5,500.00 in costs already incurred by Class Counsel, including but not limited to litigation filings, service fees, expert fees, and private mediator fees, the Parties agree that such litigation costs and expenses shall be paid from the Settlement Fund within forty-five (45) days after entry of the ~~Final~~ Approval Order. Class Counsel acknowledges and agrees that such amount constitutes the full and complete amount of any costs incurred by them in connection with the Lawsuit, and that they shall have no right or entitlement to recovery of any attorneys' fees, expenses and/or costs other than as specifically set forth herein.

       G.    Settlement Administrator Fees and Costs.   As described in more detail below, Settlement Administrator Fees and Costs will be paid from the Settlement Fund. Settlement Administrator Fees and Costs shall be deducted from the Settlement Fund prior to distribution of any monies to the Class Members. Settlement Administrator Fees and Costs are estimated (by *ILYM*) to be $7,850.00.

       4.    <u>Settlement Approval Process</u>.

       A.    Timeline for Filing.  ~~Within thirty (30) days of the Parties' execution of this Agreement, Plaintiff~~The Parties shall file a motion for ~~preliminary~~ approval ~~("Preliminary Approval Motion")~~ that ~~, subject to review and confirmation by Defendant, shall be unopposed, and which~~ shall include: (i) the proposed Notice of ~~Proposed~~ Class Action Settlement and Fairness Hearing; (ii) a ~~P~~proposed ~~Preliminary Approval~~ Order; (iii) an executed version of this (revised) Agreement; and, (iv) the necessary documents, memorandum, affidavits, and exhibits for the purposes of ~~preliminarily~~ approving the Agreement, as well as such other matters as may be required for purposes of obtaining ~~Preliminary Approval~~Approval.

4865-6503-7505.2 / 105098-1004
**Error! Unknown document property name.**4926-3955-5960.1 / 105098-1004
**Error! Unknown document property name.**11/6/2025 4:12 PM

Settlement Agreement & Release
Page 8 of 14

~~The Preliminary Approval Motion will also seek, for settlement purposes only, to set a date for a Final Approval Hearing re. the Settlement, which shall be no earlier than ninety (90) days following the date of the mailing of the Notice by the Settlement Administrator.~~

B.    Issuance of Notice.    Within thirty (30) calendar days of the Court's order granting ~~Preliminary~~ Approval (the "~~Preliminary~~ Approval Date"), Defendants shall produce to the Settlement Administrator the list of Class Member's names, Employee ID numbers, last known addresses, telephone numbers, and email addresses, if known. Additionally, Defendants shall cooperate with the Settlement Administrator to produce whatever other information is reasonably necessary to effect Notice and Settlement Payments, provided that Defendants shall not be required to perform any skip traces or similar actions with respect to any Class Members.

Within forty-five (45) calendar days of the Court's order granting ~~Preliminary~~ Approval, the Settlement Administrator will mail the Notice in a form substantially similar to the notice attached hereto and made a part of this Agreement as Exhibit B (the "Notice"). If any Notices are returned by the postal service as undeliverable, the Settlement Administrator shall use reasonable best efforts in locating the individual by performing a skip trace or similar method for locating an updated address. The Settlement Administrator will promptly re-mail the Notice to the updated address, if identified. If, after a second mailing of the Notice, the Notice is returned by the postal service as undeliverable or if a second address cannot be identified after Class Counsel's reasonable efforts, the Parties shall be deemed to have satisfied their obligation to provide the applicable Notice to that individual.

~~C.    Fairness Hearing and Motion for Final Approval and Dismissal.    In accordance with the schedule set by the Court in its Preliminary Approval Order and in advance of the Fairness Hearing, Class Counsel shall file a "Motion for Final Approval," with supporting documents and materials for Final Approval of the Settlement, which shall be subject to review and confirmation by the Defendant. The Motion for Final Approval may contain a compliance affidavit from the Settlement Administrator, an application for attorneys' fees, costs, and the Service Awards, and a supporting affirmation and documents from Class Counsel regarding the fairness, adequacy, and reasonableness of the Settlement or any aspect related to this Agreement. The Motion for Final Approval shall also include a proposed Final Approval Order. "Final Approval Order" shall mean the Order entered by the Court after the Fairness Hearing approving the terms and conditions of this Agreement, confirming distribution of the Settlement Payments from the Settlement Fund, approval of professional fees, expenses and costs, and dismissal of the Lawsuit with prejudice.~~

~~At the Fairness Hearing, the Parties will request that the Court, among other things: (1) approve the Settlement and Agreement as fair, reasonable, adequate, and, binding on all Class Members; (2) order the Settlement Administrator to distribute Settlement Checks; (3) order the attorneys' fees, expenses and costs to be paid to Class Counsel out of the Settlement Fund; (4) order the Settlement Administrator's fees and expenses be paid out of the Settlement Fund; (5) order that the Service Awards be paid out of the Settlement Fund; (6) order the dismissal with prejudice of all State Law Claims by all Class Members and the Plaintiffs, as well as the FLSA Claims with respect to any Class Members who endorse their Settlement Checks, consistent with the terms of~~

4865-6503-7505.2 / 105098-1004
**Error! Unknown document property name.**4926-3955-5960.1 / 105098.1004
**Error! Unknown document property name.**11/6/2025 4:12 PM

Settlement Agreement & Release
Page 9 of 14

~~this Agreement; and, (7) order entry of Final Dismissal with prejudice in accordance with this Agreement.~~

D.      Effect of Failure to Grant ~~Final~~ Approval. In the event the Court fails to dismiss this matter with prejudice in accordance with this Agreement or such dismissal or this Settlement does not become final as defined herein, the Parties shall resume the Lawsuit unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of dismissal with prejudice, or (2) attempt to renegotiate the Settlement and seek Court approval of the renegotiated Settlement. In the event any reconsideration or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Lawsuit will proceed as if no settlement had been attempted. In that event, any Class which was certified for purposes of settlement shall be automatically decertified, and the Defendants may contest whether this Lawsuit should be maintained as a class action and contest the merits of the claims being asserted by Plaintiffs in this action.

~~E.      Effect of Final Approval of Class Settlement.      If the Court grants Final Approval of the Agreement, the Final Effective Date shall be thirty-five (35) days after the Court has entered a Final Approval Order (as defined herein) approving this Agreement, provided the time to appeal from the Final Approval Order has expired and no notice of appeal has been filed. In the event a notice of appeal is filed, the "Final Effective Date" shall be the latest of the following: (1) the date any appeal from the Final Approval Order has been finally dismissed; (2) the date the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; and/or (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Approval Order in a form substantially identical (i.e., including identical payment obligations and procedures, releases, and other material terms) to the form of the Final Approval Order entered by the Court.~~

F.      Settlement Administrator Responsibilities.    The Settlement Administrator shall be responsible for: (a) verifying and finalizing the calculations of the tax withholding amounts with respect to the Class Members as it relates to payments to be made from the Settlement Fund; (b) preparing, printing and disseminating the Notice to the Class Members through the U.S. Mail; (c) copying Class Counsel and counsel for the Parties on material correspondence and promptly notifying Class Counsel and counsel for the Parties of any material requests or communications made by any of the Class Members; (d) mailing individual Settlement Payments from the Settlement Fund to the Class Members in accordance with this Agreement; (e) advising the Parties of the amount of all employer-side taxes due and deducting and paying employee-side payroll tax obligations arising from all payments made to the Class Members, as applicable, in accordance with this Agreement; (f) issuing W-2 and 1099-MISC Forms for all amounts paid to the Class Members; (g) performing one "skip-trace" or similar process to ascertain the current address and addressee information for each Notice returned as undeliverable; (h) resending a Notice via U.S. Mail, one (1) time each, to the Class Members whose Notices are returned as undeliverable and for whom a better, more current or alternative address is ascertained by performing a skip-trace or similar process; (i) promptly apprising counsel for the Parties of the activities of the Settlement

4865-6503-7505.2 / 105098-1004
Error! Unknown document property name.4926-3955-5960.1 / 105098.1004
Error! Unknown document property name.11/6/2025 4:12 PM

Settlement Agreement & Release
Page 10 of 14

Administrator; (j) maintaining adequate records of its activities, including the date of the mailing of the Notices, returned mail, and other communications and attempted written or electronic communications with the Class Members; (k) confirming in writing to the Parties' respective counsel its timeline for administration based on the dates set forth in this Agreement, and confirming completion of the administration of the Settlement and retaining copies of all endorsed Settlement Checks; (l) maintaining the strict confidentiality of this Agreement, the terms thereof, and all payments made hereunder; (m) providing all notices and accountings required by this Agreement; (n) establishing and administering the Settlement Fund as described above; and (o) such other tasks as the Parties mutually agree and assign.

All fees, expenses, and costs of the Settlement Administrator related directly or indirectly to the Settlement Fund (including, but not limited to, those related to Notice, check cutting, mailing, claims processing, court filings, legal and accounting advice relating to the establishment of the Settlement Fund, tax treatment and tax reporting of awards to the Class Members, and preparation of tax returns) shall be paid from the Settlement Fund.

     5.      Creation and Implementation of the Settlement Fund.

        A.      Establishing the Settlement Fund.     Unless otherwise described above, all payments from the Defendants to pay the amounts due from the Settlement will be deposited into the Settlement Fund, intended by the Parties to be a "Qualified Settlement Fund" as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, et seq. The Settlement Administrator shall establish the Settlement Fund as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, et seq., and it shall be administered by the Settlement Administrator, subject to the ultimate authority of the Court. The Defendants shall fund the Settlement Fund by no later than thirty (30) days following the court's ~~preliminary a~~Approval of this Agreement.

        B.      Administering the Settlement Fund.  The Settlement Administrator shall serve as Trustee of the Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Settlement Fund, including the handling of tax-related issues and payments. The Settlement Administrator shall act in a manner necessary to qualify the Settlement Fund as a Qualified Settlement Fund under the law and to maintain that qualification at all times. The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Parties agree to any relation-back election required to treat the Settlement Fund as a Qualified Settlement Fund from the earliest possible date.

     6.      Publicity.

Class Counsel agrees that it shall not, directly or indirectly, whether verbally, in writing or otherwise, issue any press releases, make any statements to the media, advertise in any media, or make any other public statements regarding the existence or nature of this Agreement or its terms and conditions, provided, however, that nothing contained herein shall prevent or limit Class

4865-6503-7505.2 / 105098-1004
Error! Unknown document property name.4926-3955-5960.1 / 105098.1004
Error! Unknown document property name.11/6/2025 4:12 PM

Settlement Agreement & Release
Page 11 of 14

Counsel (i) in communicating with any Class Members, or (ii) in otherwise taking such steps as may be necessary to effectuate the terms of this Agreement or as otherwise may not be limited in accordance with Class Counsel's ethical obligations as an attorney.

The Parties further agree that they will not disclose the terms and conditions of the Agreement or any of the facts underlying the Lawsuit to any person or entity, except as may be required by law, to the Internal Revenue Service, or by court order. The Parties agree not to produce this Agreement and/or disclose the terms of this Agreement to any person except with prior written consent of counsel for all Parties or in response to proper subpoena or order of a court of competent jurisdiction, or as may otherwise be required by law. However, in the event the Court does not approve of the confidentiality provision of this Agreement, the settlement of the Parties will otherwise be final with the exception that the confidentiality provision will no longer be valid.

7.     Entire Agreement, Waivers and Modifications.     This Agreement sets forth the entire agreement between the Parties, and fully replaces any and all prior agreements or understandings between the Parties regarding this Lawsuit.  This Agreement may not be changed orally, and may only be modified in writing.

8.     Acknowledgement of Understanding.     In signing this Agreement, all Parties expressly warrant that they have read and fully understand it. All Parties acknowledge that this Agreement is voluntary and that no one is making or forcing either Party to enter into it. All Parties acknowledge that they have had an opportunity to and/or have consulted with an attorney before signing it.

9.     Counterparts.  This Agreement may be executed simultaneously or in counterparts each of which shall be deemed an original, but which collectively shall constitute one and the same instrument. A copy of this Agreement has the same legal effect as an original.

10.     Construction.  This Agreement shall be interpreted in accordance with the plain meaning of its terms and not for or against the drafter.

11.     Blue Penciling. All warranties, representations, terms, conditions, covenants, agreements and releases contained herein shall survive this Agreement. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected, and the invalid parts, terms or provisions shall be deemed not a part of this Agreement.

12.     Governing Law; Venue. This Agreement is entered into in the Commonwealth of Massachusetts, and its validity, construction, interpretation and administration shall be governed by the laws of the Commonwealth of Massachusetts and/or federal law. This Agreement may be enforced by any court having jurisdiction and relief shall include specific performance and injunctive relief.

13.     Cooperation. All Parties agree to cooperate fully, to execute any and all supplementary documents, and to take all additional actions which may be necessary or

4865-6503-7505.2 / 105098-1004
Error! Unknown document property name.4926-3955-5960.1 / 105098.1004
Error! Unknown document property name.11/6/2025 4:12 PM

Settlement Agreement & Release
Page 12 of 14

appropriate to give full force and effect to the basic terms and intent of this Agreement.

If this Agreement is not approved by the Court, the Parties will work cooperatively to address any concerns articulated by the Court, provided, however, that nothing herein shall require Defendant to increase the value of the Settlement Fund. If this Agreement is not approved by the Court and if no further agreement can be reached, Defendant will cease to have any obligation to pay or provide any portion of the Settlement Fund, the Service Award, or the Settlement Administrator's fees, the releases in Section 2 above will not be effectuated, any class that has been certified (preliminarily or otherwise) shall be decertified, and this matter will move forward in litigation. If the Agreement is not approved by the Court, the Agreement itself shall not exist and shall be void *ab initio*, and the Defendant reserves any and all rights to oppose any motion to certify a class or collective in this Lawsuit or any other lawsuit, and to further move to decertify any class or conditionally certified collective, and no representation or concession made in connection with the Agreement shall be considered law of the case or an admission by the Defendant or to have any kind of preclusive effect against the Defendant or to give rise to any form of estoppel or waiver by the Defendant in this Lawsuit or any other proceeding.

14.    Acknowledgments.    In entering into this Agreement, all Parties represent that they have relied upon or were permitted to rely upon at their sole discretion the legal advice of their attorney, who is the attorney of their choice, and that the terms of this Agreement have been completely read and explained to them by their respective attorney, and that they fully understand and accept those terms.

BY: _____        _____  .
            ROSEMARY TEFFT                                    DATE


BY:_____        _____
            PRESIDENT AND CEO of                              DATE
            INTEGRITUS HEALTHCARE, INC.

4865-6503-7505.2 / 105098-1004
Error! Unknown document property name.4926-3955-5960.1 / 105098-1004
Error! Unknown document property name.11/6/2025 4:12 PM

Exhibit B

## GLOBAL SETTLEMENT AGREEMENT AND RELEASE

**THIS GLOBAL SETTLEMENT AGREEMENT AND RELEASE** ("Agreement") is made and entered into by and among Rosemary Tefft ("Tefft" and/or "Plaintiff"), on behalf of herself and all individuals similarly situated (collectively, the "Employees" of the "Putative Class" as further defined below, and referred to herein on occasion as "Putative Class Members"), and Integritus Healthcare, LLC f/k/a Berkshire Healthcare Systems, Inc. ("Integritus" or "Defendant"), on behalf of themselves and their parents, subsidiaries, affiliates, business units, members, shareholders, and their predecessors and successors, insurers, officers, directors, agents, attorneys, employees, and assigns. Plaintiff, together with the Putative Class Members and the Defendant, are each referred to hereinafter as a "Party" and collectively as the "Parties" in this Agreement.

## RECITALS

**WHEREAS,** Plaintiff, on behalf of herself and others similarly situated, instituted a civil action against Defendant, captioned *Tefft, et al. v. Integritus Healthcare, LLC, et al.*, Case No. 3:23-CV-30037-MGM, in the United States District Court for the District of Massachusetts, on April 3, 2023 (the "Complaint"). Plaintiff's Complaint was a purported class and collective action brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and Massachusetts wage-and-hour laws ("Wage Act"), M.G.L. c. 151, §§ 1A, *et seq.*; and,

**WHEREAS**, on June 22, 2023, Plaintiff amended the Complaint ("Amended Complaint"). The operative Amended Complaint is a purported class and collective action that brings one count for violation of the FLSA and one count for violation of the Wage Act to recover allegedly unpaid overtime owed to Plaintiff and to similarly situated employees, based on an alleged failure to properly include shift premiums when calculating employees' regular hourly rate(s) of pay (the "Lawsuit"); and,

**WHEREAS**, the Putative Class Members that Plaintiff seeks to represent in the Lawsuit includes 304 current and former individuals who worked at Integritus's affiliate, Charlene Manor Extended Care, during the three-year period preceding the filing of the Lawsuit on April 3, 2020, through May 31, 2023; and,

**WHEREAS**, Defendant denies the allegations in Plaintiff's lawsuit in their entirety, denies liability in its entirety, and denies that any class is capable of being certified in this Lawsuit; and,

**WHEREAS,** the Parties recognize that there is a *bona fide* dispute as to the back pay and/or liquidated damages owed, if any, in connection with the claims alleged in the Lawsuit, and if owed, whether any alleged underlying violation of the Fair Labor Standards Act ("FLSA") giving rise to such damages would be considered by the Court to be "willful"; and,

**WHEREAS**, the Parties wish to avoid the disruption and expense of litigation; and,

**WHEREAS**, the Parties attended mediation with Lynn Cohn on March 26, 2024, after an exchange of significant informal discovery, in a good faith effort to negotiate a resolution of the Lawsuit, and ultimately agreed to a resolution of the Lawsuit on the terms and conditions set forth in this Agreement (the "Settlement"); and,

Error! Unknown document property name.
Error! Unknown document property name.

**WHEREAS**, Josephson Dunlap, LLP, and Bruckner Burch, PLLC, counsel for Plaintiff and, subject to Court approval ("Approval"), for the Putative Class Members ("***Class Counsel***"), has analyzed and evaluated the merits of the claims made against the Defendant and the impact of this Agreement on Plaintiff and the Putative Class Members, including, without limitation, based upon data, including payroll and other records, provided to Class Counsel by Defendant, and based upon Class Counsel's analysis and evaluation of a number of other factors. Recognizing the substantial risks of continued litigation, including the possibility that the Lawsuit, if not settled now, might result in no recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Plaintiff and the Putative Class Members; and,

**NOW, THEREFORE,** in consideration of the premises and mutual promises contained herein, it is agreed as follows:

1.     <u>Non-Admission of Liability</u>. This Agreement is not an admission of any wrongdoing by any Party, nor shall it be interpreted or construed to be an admission of any wrongdoing by any Party. By entering into this Agreement, Defendant does not admit to any wrongdoing or violation of federal or state statutes or regulations of any kind, or that Defendant is liable for any of the amounts sought by Plaintiff in the Lawsuit, and expressly denies the same. Plaintiff and the Putative Class Members understand and acknowledge the foregoing, and the Parties further agree that the instant Agreement is not evidence of, and may not be used as evidence of liability, a violation of law or other wrongdoing, or an admission of same, by Defendant. Rather, the Parties have entered into this Agreement for the sole purpose of resolving the Lawsuit and all possible claims at issue at this time (as defined in Section 2, below) and to avoid the burden, expense, delay, and uncertainties of litigation.

2.     <u>Release of Claims</u>.

Upon issuance of the Approval Order, and except as to such rights or claims as may be specifically created by this Agreement, by endorsing their Settlement Check, Plaintiff and each Putative Class Member, on their behalf, and on behalf of their respective current, former, and future heirs, executors, administrators, agents, attorneys, successors, and assigns, fully releases and discharges Defendant, and each of their respective parents, subsidiaries and affiliates, and each of their respective shareholders, members, officers, directors, employees, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them, solely in their capacity as such (collectively, the "***Releasees***"), from any and all claims for any wage and hour violations, including without limitation, concerning any and all claims for unpaid working time, wages, minimum wages, overtime, off-the-clock work, time rounding, and related claims that were or could have been asserted against any of the Releasees and/or were asserted in the Lawsuit, any and all claims for unpaid overtime allegedly owed to Plaintiff and to similarly situated employees, based on an alleged failure to properly include shift premiums when calculating employees' regular hourly

4865-6503-7505.2 / 105098-1004
**Error! Unknown document property name.**
**Error! Unknown document property name.**

rate(s) of pay, and any and all claims relating thereto or arising therefrom, including without limitation any and all claims for unpaid time, by Plaintiff and each Putative Class Member under federal law, including without limitation the FLSA, 29 U.S.C. §§ 201 *et seq.*, and its related rules and regulations, Massachusetts state and/or local law, including without limitation claims arising under the Massachusetts Wage Act, M.G.L. c. 149 § 148 *et seq.*, and the Massachusetts Minimum Fair Wage Law, M.G.L. c. 151 § 1 *et seq.*, M.G.L. 151 § 1A, *et seq.*, and M.G.L. 151 § 1B, *et seq.*, and any supporting or related laws, statutes, rules or regulations, from April 3, 2020, through entry of the Approval Order. This Release includes all claims for all damages arising from any such released claims, including without limitation claims for liquidated damages, penalties, interest, and attorneys' fees and costs. Released claims include any and all manner of actions, causes of action, suits, accounts, claims, demands, controversies, judgments, obligations, damages and liabilities of any nature whatsoever, under federal, state or local laws, whether or not now known, suspected or claimed, that were asserted, or could have been asserted by the Putative Class Members in this Lawsuit, that in any way relate to or arise out of the conduct alleged in the Complaint filed by Plaintiffs in the Lawsuit or similar conduct, wherever it may have occurred.

Participating Putative Class Members also knowingly and voluntarily do hereby fully, finally, irrevocably, and forever unconditionally release, acquit, and discharge Defendant of and from any and all wage and hour complaints, wage and hour claims, wage and hour demands, wage and hour liabilities, wage and hour obligations, wage and hour promises, wage and hour agreements, wage and hour controversies, wage and hour action, wage and hour causes of action, wage and hour suits, wage and hour rights, wage and hour damages, wage and hour costs, wage and hour losses, wage and hour debts, wage and hour accounts, wage and hour charges, and wage and hour expenses (including attorney's fees and costs actually incurred), whether in law or in equity, both known and unknown, which arose before the Approval Date of this Agreement which they might otherwise have against Defendants regarding any aspect of their employment with Defendant.

3.  Settlement Payments.

A.  Settlement Fund. As consideration for this Agreement, the releases set forth in Section 2 above, and in full and final settlement of any claims, damages, attorney's fees and costs which were made by Plaintiff, and on behalf of the Putative Class Members in the Lawsuit, the Defendant shall pay Ninety Five Thousand dollars and no/100 cents ($95,000.00) (the "Settlement Fund").

The Settlement Fund shall be allocated as follows:

i)  Two Thousand Five Hundred dollars and no/100 ($2,500.00) representing an incentive payment to Rosemary Tefft;

ii)  Thirty Eight Thousand dollars and Zero/100 cents ($38,000.00) representing the attorney's fees payable to Class Counsel;

iii)  Five Thousand Five Hundred Dollars and Zero/100 cents ($5,500.00) representing case expenses payable to Class Counsel;

4865-6503-7505.2 / 105098-1004
**Error! Unknown document property name.**
**Error! Unknown document property name.**

iv)    Any and all fees and costs associated with the retention of and provision of services by ILYM, a settlement administrator, agreed by the Parties at mediation to administer the Settlement Fund ("Settlement Administrator");

(v)    The remaining balance (the "Net Settlement Amount") representing the amount to be paid to each of the Putative Class Members (including Plaintiff) according to the apportionment/schedule attached hereto as **Exhibit A**. A list of the identities and last-known contact information (including the last-known mailing address, last-known telephone number, and last-known email address(es), where available) for the Putative Class Members, and the funds for the corresponding checks ("Settlement Checks") for payment to such Putative Class Members, shall be sent to Settlement Administrator, for distribution to the participating Putative Class Members within forty-five (45) days of the Court's approval of the settlement. Plaintiffs' Counsel shall likewise issue the attached Notice with each check, the form and template of which is attached as Exhibit B.

The minimum individual settlement recovery for any Settlement Member will be $20.00. This means that for any Settlement Member whose individual damages calculation is less than $20.00, or whose *pro rata* share of the Net Settlement Amount would result in receiving an amount less than $20.00, the minimum amount any such Settlement Member will receive if they choose to participate in the Settlement will be at least $20.00.

The apportionment/schedule set forth in **Exhibit A** has been prepared by counsel for the Plaintiff and putative class members, and the apportionment therein is requested by counsel for the Plaintiff and putative class members. Integritus and its counsel make no representations as to the calculations giving rise to and/or content set forth in **Exhibit A.**

B.    Settlement Checks. The Settlement Administrator shall be responsible for distributing the agreed-upon Notice and settlement checks to Plaintiff and each of the participating Putative Class Members. A release containing agreed-upon language shall be identified on the back of each check distributed to the participating Putative Class Members. Execution of their settlement check by each of the participating Putative Class Members will render them as participating in the settlement and shall release their claims as stated herein, subject to clearing of funds furnished by Defendant. If any Putative Class Member does not execute a settlement check containing the release language below (or words to similar effect in the event that such is not administratively feasible), such Employee will not participate in the settlement, shall receive no settlement funds, and shall not release any claims hereunder.

On the stub attached to each check distributed to each of the Putative Class Members pursuant to this Agreement, the following language will appear at or below the endorsement section (or words to similar effect in the event that such is not administratively feasible):

## RELEASE OF CLAIMS:

By endorsing and negotiating this check and accepting payment, (a) I fully accept

4865-6503-7505.2 / 105098-1004
**Error! Unknown document property name.**
**Error! Unknown document property name.**

and agree to opt-in to the Settlement Class in the case titled *Tefft, et al. v. Integritus Healthcare, LLC et al.*, Case No. 3:23-CV-30037-MGM, (b) I may review a copy of the Settlement Agreement and I represent that I have done to the extent so desired, (c) I agree to be bound by the terms and conditions of the Settlement Agreement entered into and executed by Plaintiff, Rosemary Tefft, the class/collective representative, on my behalf, and (d) I release the Releasees (as defined in the Settlement Agreement) from all wage and hour claims under the Fair Labor Standards Act, the Massachusetts Wage Act, the Massachusetts Minimum Fair Wage Law, and/or any other applicable wage and hour law, rule or regulation brought, or which could have been brought, in *Tefft*, including my release of claims contained in that Settlement Agreement.

The participating Putative Class Members shall have 120 days from the date the Settlement Administrator distributes the Notice and checks to cash or negotiate the checks. Any modification or amendment of the endorsement language set forth on the stub attached to a Settlement Check by a Putative Class Member will be invalid and will not be accepted. Any Putative Class Member who does not endorse and/or otherwise cash their Settlement Checks shall be deemed not to have opted into the settlement with respect to any Claims arising under the FLSA and shall retain any rights and remedies such Class Member may have under the FLSA.

The Parties recognize that the Wage Portion of the Settlement Payments to the Putative Class Members will be classified as wages and will be subject to applicable tax withholding and reporting. The Settlement Administrator shall be responsible for withholding and timely remitting and reporting to the appropriate taxing authorities the employee's share of payroll taxes or contributions (*i.e.*, FICA, FUTA, SUTA, and Medicare) from such payments. Subject to the Settlement Administrator's obligation to comply with applicable laws, the Parties anticipate that any amounts designated as the Non-Wage Portions of the Settlement Payments and the Service Awards to the Plaintiffs shall not be subject to withholding and shall be reported to the IRS on Form 1099, as may be required by the IRS. The employer's share of payroll taxes required to be paid by the Defendant shall be paid by the Defendant in addition to the Settlement Fund.

To the extent permissible under Defendants' respective benefit plans, the payments made to Class Members under this Agreement shall not be utilized to calculate any additional benefits under any benefit plans to which any Class Member may be eligible including, but not limited to profit-sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick leave plans, and paid time off plans. Rather, it is the Parties' intention that this Agreement will not affect any rights, contributions, or amounts to which any Class Member may be entitled under any benefit plans.

For any employee who does not participate in the settlement, their apportioned share of settlement funds from the Net Settlement shall revert to Defendant. No other portion of settlement funds shall revert back to Defendant, including Rosemary Tefft's individual recovery and/or incentive payment (if approved by the Court), attorneys' fees, and case expenses as outlined in Paragraph 3(C)-(G), below.

4865-6503-7505.2 / 105098-1004
**Error! Unknown document property name.**
**Error! Unknown document property name.**

At the expiration of the one hundred twenty (120) day check-cashing period, the Settlement Administrator will inform counsel for the Defendant which checks were negotiated, and which became void, as well as an accounting of the cash value of all amounts reverting to Defendant. In addition to this information, the Settlement Administrator will also provide counsel for the Defendant information regarding the amount of employer-side taxes due on the Wage Portion of the Settlement Payments which were negotiated. Within thirty (30) days of receiving this information from Settlement Administrator, the Defendant shall make an additional payment in the amount calculated by Settlement Administrator. The Defendant also shall have the option of directly paying all employer-side taxes to the respective taxing authorities.

      C.      **Settlement Payment to Lead Plaintiff.**      Subject to Court approval, and as identified above, Plaintiff will receive a payment of Two Thousand Five Hundred Dollars and Zero Cents ($2,500.00) (the "Service Award") in further consideration of the releases contained herein. This payment is part of the Settlement Fund and shall be provided to the Settlement Administrator for disbursement at the time that the other Settlement Checks are distributed to Class Members, *i.e.*, within forty-five (45) days after the court approves this Agreement, subject to prior receipt of a completed Form W-9 from Plaintiff. The Service Award is in addition to the Settlement Payment that Plaintiff is entitled to receive from the Settlement Fund as a Putative Class Member. Plaintiff will be responsible for correctly characterizing this payment for tax purposes and for paying taxes on any amount received. Neither Defendant, Defendant's Counsel, Plaintiff's Counsel, nor Class Counsel are providing any tax advice to Plaintiff in connection with the Service Award or any other payment.

      D.      **Tax Allocation of Putative Class Member Payments.**      Settlement Payments to the Settlement Class Members will be allocated as follows for tax purposes: (i) one-half (1/2) in consideration for time worked as back-wage payments and/or wage income subject to W-2 reporting (the "Wage Portion"); and (ii) one-half (1/2) in consideration for statutory penalties, liquidated damages, interest, and all other non-wage recovery subject to 1099 reporting ("Non-Wage Portion"). Class Members are responsible for the proper income tax treatment of the individual Settlement Payments received. Neither the Settlement Administrator, Defendant nor Defendant's Counsel, are providing any tax advice. Accordingly, Putative Class Members should consult with their tax advisors concerning the tax consequences and treatment of any payment they receive hereunder.

      E.      **Attorneys' Fees and Costs.**      In consideration for the work already performed in this matter and all work remaining to be performed in documenting the Settlement, securing Court approval of the Settlement, and ensuring the Settlement is fairly implemented, the Parties agree that an amount of $38,000.00, exclusive of any out-of-pocket costs and expenses, shall be allocated to Class Counsel for attorneys' fees, subject to Court approval (the "Class Counsel Fees"). The Settlement Administrator shall make these payments to Josephson Dunlap, LLP. The Class Counsel Fees shall be paid from the Settlement Fund within forty-five (45) days after entry of the Approval Order. The Settlement Administrator will issue an IRS Form 1099 to Class Counsel, Josephson Dunlap LLP, subject to the Defendant's prior receipt of an appropriate W-9 from Class Counsel.

4865-6503-7505.2 / 105098-1004
**Error! Unknown document property name.**
**Error! Unknown document property name.**

F.    Litigation Costs and Expenses.    In consideration for $5,500.00 in costs already incurred by Class Counsel, including but not limited to litigation filings, service fees, expert fees, and private mediator fees, the Parties agree that such litigation costs and expenses shall be paid from the Settlement Fund within forty-five (45) days after entry of the Approval Order. Class Counsel acknowledges and agrees that such amount constitutes the full and complete amount of any costs incurred by them in connection with the Lawsuit, and that they shall have no right or entitlement to recovery of any attorneys' fees, expenses and/or costs other than as specifically set forth herein.

G.    Settlement Administrator Fees and Costs.    As described in more detail below, Settlement Administrator Fees and Costs will be paid from the Settlement Fund. Settlement Administrator Fees and Costs shall be deducted from the Settlement Fund prior to distribution of any monies to the Class Members. Settlement Administrator Fees and Costs are estimated (by *ILYM)* to be $7,850.00.

4.    Settlement Approval Process.

A.    Timeline for Filing.    The Parties shall file a motion for approval that shall include: (i) the proposed Notice of Class Action Settlement and Fairness Hearing; (ii) a Proposed Order; (iii) an executed version of this (revised) Agreement; and, (iv) the necessary documents, memorandum, affidavits, and exhibits for the purposes of approving the Agreement, as well as such other matters as may be required for purposes of obtaining Approval.

B.    Issuance of Notice.    Within thirty (30) calendar days of the Court's order granting Approval (the "Approval Date"), Defendants shall produce to the Settlement Administrator the list of Class Member's names, Employee ID numbers, last known addresses, telephone numbers, and email addresses, if known. Additionally, Defendants shall cooperate with the Settlement Administrator to produce whatever other information is reasonably necessary to effect Notice and Settlement Payments, provided that Defendants shall not be required to perform any skip traces or similar actions with respect to any Class Members.

Within forty-five (45) calendar days of the Court's order granting Approval, the Settlement Administrator will mail the Notice in a form substantially similar to the notice attached hereto and made a part of this Agreement as Exhibit B (the "Notice"). If any Notices are returned by the postal service as undeliverable, the Settlement Administrator shall use reasonable best efforts in locating the individual by performing a skip trace or similar method for locating an updated address. The Settlement Administrator will promptly re-mail the Notice to the updated address, if identified. If, after a second mailing of the Notice, the Notice is returned by the postal service as undeliverable or if a second address cannot be identified after Class Counsel's reasonable efforts, the Parties shall be deemed to have satisfied their obligation to provide the applicable Notice to that individual.

4865-6503-7505.2 / 105098-1004
**Error! Unknown document property name.**
**Error! Unknown document property name.**

D.    Effect of Failure to Grant Approval. In the event the Court fails to dismiss this matter with prejudice in accordance with this Agreement or such dismissal or this Settlement does not become final as defined herein, the Parties shall resume the Lawsuit unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of dismissal with prejudice, or (2) attempt to renegotiate the Settlement and seek Court approval of the renegotiated Settlement. In the event any reconsideration or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Lawsuit will proceed as if no settlement had been attempted. In that event, any Class which was certified for purposes of settlement shall be automatically decertified, and the Defendants may contest whether this Lawsuit should be maintained as a class action and contest the merits of the claims being asserted by Plaintiffs in this action.

F.    Settlement Administrator Responsibilities.   The Settlement Administrator shall be responsible for: (a) verifying and finalizing the calculations of the tax withholding amounts with respect to the Class Members as it relates to payments to be made from the Settlement Fund; (b) preparing, printing and disseminating the Notice to the Class Members through the U.S. Mail; (c) copying Class Counsel and counsel for the Parties on material correspondence and promptly notifying Class Counsel and counsel for the Parties of any material requests or communications made by any of the Class Members; (d) mailing individual Settlement Payments from the Settlement Fund to the Class Members in accordance with this Agreement; (e) advising the Parties of the amount of all employer-side taxes due and deducting and paying employee-side payroll tax obligations arising from all payments made to the Class Members, as applicable, in accordance with this Agreement; (f) issuing W-2 and 1099-MISC Forms for all amounts paid to the Class Members; (g) performing one "skip-trace" or similar process to ascertain the current address and addressee information for each Notice returned as undeliverable; (h) resending a Notice via U.S. Mail, one (1) time each, to the Class Members whose Notices are returned as undeliverable and for whom a better, more current or alternative address is ascertained by performing a skip-trace or similar process; (i) promptly apprising counsel for the Parties of the activities of the Settlement Administrator; (j) maintaining adequate records of its activities, including the date of the mailing of the Notices, returned mail, and other communications and attempted written or electronic communications with the Class Members; (k) confirming in writing to the Parties' respective counsel its timeline for administration based on the dates set forth in this Agreement, and confirming completion of the administration of the Settlement and retaining copies of all endorsed Settlement Checks; (l) maintaining the strict confidentiality of this Agreement, the terms thereof, and all payments made hereunder; (m) providing all notices and accountings required by this Agreement; (n) establishing and administering the Settlement Fund as described above; and (o) such other tasks as the Parties mutually agree and assign.

All fees, expenses, and costs of the Settlement Administrator related directly or indirectly to the Settlement Fund (including, but not limited to, those related to Notice, check cutting, mailing, claims processing, court filings, legal and accounting advice relating to the establishment of the Settlement Fund, tax treatment and tax reporting of awards to the Class Members, and preparation of tax returns) shall be paid from the Settlement Fund.

4865-6503-7505.2 / 105098-1004
Error! Unknown document property name.
Error! Unknown document property name.

5.      Creation and Implementation of the Settlement Fund.

        A.      Establishing the Settlement Fund.      Unless otherwise described above, all payments from the Defendants to pay the amounts due from the Settlement will be deposited into the Settlement Fund, intended by the Parties to be a "Qualified Settlement Fund" as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, et seq. The Settlement Administrator shall establish the Settlement Fund as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, et seq., and it shall be administered by the Settlement Administrator, subject to the ultimate authority of the Court. The Defendants shall fund the Settlement Fund by no later than thirty (30) days following the court's Approval of this Agreement.

        B.      Administering the Settlement Fund.  The Settlement Administrator shall serve as Trustee of the Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Settlement Fund, including the handling of tax-related issues and payments. The Settlement Administrator shall act in a manner necessary to qualify the Settlement Fund as a Qualified Settlement Fund under the law and to maintain that qualification at all times. The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Parties agree to any relation-back election required to treat the Settlement Fund as a Qualified Settlement Fund from the earliest possible date.

6.      Publicity.

Class Counsel agrees that it shall not, directly or indirectly, whether verbally, in writing or otherwise, issue any press releases, make any statements to the media, advertise in any media, or make any other public statements regarding the existence or nature of this Agreement or its terms and conditions, provided, however, that nothing contained herein shall prevent or limit Class Counsel (i) in communicating with any Class Members, or (ii) in otherwise taking such steps as may be necessary to effectuate the terms of this Agreement or as otherwise may not be limited in accordance with Class Counsel's ethical obligations as an attorney.

The Parties further agree that they will not disclose the terms and conditions of the Agreement or any of the facts underlying the Lawsuit to any person or entity, except as may be required by law, to the Internal Revenue Service, or by court order. The Parties agree not to produce this Agreement and/or disclose the terms of this Agreement to any person except with prior written consent of counsel for all Parties or in response to proper subpoena or order of a court of competent jurisdiction, or as may otherwise be required by law. However, in the event the Court does not approve of the confidentiality provision of this Agreement, the settlement of the Parties will otherwise be final with the exception that the confidentiality provision will no longer be valid.

7.      Entire Agreement, Waivers and Modifications.      This Agreement sets forth the entire agreement between the Parties, and fully replaces any and all prior agreements or understandings between the Parties regarding this Lawsuit.  This Agreement may not be changed orally, and may only be modified in writing.

**Error! Unknown document property name.**
**Error! Unknown document property name.**

8.      Acknowledgement of Understanding.       In signing this Agreement, all Parties expressly warrant that they have read and fully understand it. All Parties acknowledge that this Agreement is voluntary and that no one is making or forcing either Party to enter into it. All Parties acknowledge that they have had an opportunity to and/or have consulted with an attorney before signing it.

9.      Counterparts.  This Agreement may be executed simultaneously or in counterparts each of which shall be deemed an original, but which collectively shall constitute one and the same instrument. A copy of this Agreement has the same legal effect as an original.

10.     Construction.  This Agreement shall be interpreted in accordance with the plain meaning of its terms and not for or against the drafter.

11.     Blue Penciling. All warranties, representations, terms, conditions, covenants, agreements and releases contained herein shall survive this Agreement. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected, and the invalid parts, terms or provisions shall be deemed not a part of this Agreement.

12.     Governing Law; Venue. This Agreement is entered into in the Commonwealth of Massachusetts, and its validity, construction, interpretation and administration shall be governed by the laws of the Commonwealth of Massachusetts and/or by federal law. This Agreement may be enforced by any court having jurisdiction and relief shall include specific performance and injunctive relief.

13.     Cooperation. All Parties agree to cooperate fully, to execute any and all supplementary documents, and to take all additional actions which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

If this Agreement is not approved by the Court, the Parties will work cooperatively to address any concerns articulated by the Court, provided, however, that nothing herein shall require Defendant to increase the value of the Settlement Fund. If this Agreement is not approved by the Court and if no further agreement can be reached, Defendant will cease to have any obligation to pay or provide any portion of the Settlement Fund, the Service Award, or the Settlement Administrator's fees, the releases in Section 2 above will not be effectuated, any class that has been certified (preliminarily or otherwise) shall be decertified, and this matter will move forward in litigation. If the Agreement is not approved by the Court, the Agreement itself shall not exist and shall be void *ab initio*, and the Defendant reserves any and all rights to oppose any motion to certify a class or collective in this Lawsuit or any other lawsuit, and to further move to decertify any class or conditionally certified collective, and no representation or concession made in connection with the Agreement shall be considered law of the case or an admission by the Defendant or to have any kind of preclusive effect against the Defendant or to give rise to any form of estoppel or waiver by the Defendant in this Lawsuit or any other proceeding.

4865-6503-7505.2 / 105098-1004
Error! Unknown document property name.
Error! Unknown document property name.

14.    Acknowledgments.    In entering into this Agreement, all Parties represent that they have relied upon or were permitted to rely upon at their sole discretion the legal advice of their attorney, who is the attorney of their choice, and that the terms of this Agreement have been completely read and explained to them by their respective attorney, and that they fully understand and accept those terms.

BY:_____       11/10/2025
          _____
                    ROSEMARY TEFFT                              DATE


BY:_____       _____
          PRESIDENT AND CEO of                                 DATE
          INTEGRITUS HEALTHCARE, INC.

4865-6503-7505.2 / 105098-1004
**Error! Unknown document property name.**
**Error! Unknown document property name.**

14.     Acknowledgments.     In entering into this Agreement, all Parties represent that they have relied upon or were permitted to rely upon at their sole discretion the legal advice of their attorney, who is the attorney of their choice, and that the terms of this Agreement have been completely read and explained to them by their respective attorney, and that they fully understand and accept those terms.

BY: _____          _____
        ROSEMARY TEFFT                                    DATE


BY: _____          _____
        PRESIDENT AND CEO of                          DATE
        INTEGRITUS HEALTHCARE, INC.

**Exhibit A**

| Eligible Class Member (ID#) | Pro Rata Share |
|---|---|
| 000008852 | $ 20.00 |
| 000009285 | $ 20.00 |
| 000009334 | $ 179.62 |
| 000010787 | $ 20.00 |
| 000010835 | $ 129.97 |
| 000010993 | $ 20.00 |
| 000300002 | $ 1,304.97 |
| 000300026 | $ 225.02 |
| 000300147 | $ 146.92 |
| 000300192 | $ 44.40 |
| 000300203 | $ 324.25 |
| 000300223 | $ 20.00 |
| 000300273 | $ 20.00 |
| 000300283 | $ 47.10 |
| 000300330 | $ 20.00 |
| 000300362 | $ 27.91 |
| 000300374 | $ 149.02 |
| 000300412 | $ 908.53 |
| 000300447 | $ 20.00 |
| 000300457 | $ 221.58 |
| 000300464 | $ 43.24 |
| 000300473 | $ 165.78 |
| 000300476 | $ 843.31 |
| 000300490 | $ 43.97 |
| 000300548 | $ 20.00 |
| 000300556 | $ 20.00 |
| 000300570 | $ 20.00 |
| 000300627 | $ 21.90 |
| 000300666 | $ 20.00 |
| 000300680 | $ 559.71 |
| 000300701 | $ 20.00 |
| 000300713 | $ 20.00 |
| 000300734 | $ 20.00 |
| 000300748 | $ 20.00 |
| 000300762 | $ 20.00 |
| 000300775 | $ 2,400.61 |
| 000300776 | $ 20.00 |
| 000300793 | $ 20.64 |

| | |
|---|---|
| 000300794 | $ 20.00 |
| 000300829 | $ 20.00 |
| 000300831 | $ 20.00 |
| 000300846 | $ 570.27 |
| 000300864 | $ 24.52 |
| 000300866 | $ 342.95 |
| 000300932 | $ 223.66 |
| 000300937 | $ 74.12 |
| 000300941 | $ 243.37 |
| 000300950 | $ 20.00 |
| 000300951 | $ 87.63 |
| 000300961 | $ 89.81 |
| 000300964 | $ 167.41 |
| 000300965 | $ 37.21 |
| 000300974 | $ 20.00 |
| 000301020 | $ 181.73 |
| 000301029 | $ 226.01 |
| 000301032 | $ 20.00 |
| 000301043 | $ 20.00 |
| 000301064 | $ 1,202.41 |
| 000301073 | $ 316.24 |
| 000301074 | $ 1,048.89 |
| 000301108 | $ 20.00 |
| 000301112 | $ 20.00 |
| 000301128 | $ 27.29 |
| 000301166 | $ 989.81 |
| 000301167 | $ 119.82 |
| 000301168 | $ 20.00 |
| 000301170 | $ 20.00 |
| 000301176 | $ 20.00 |
| 000301182 | $ 1,364.05 |
| 000301187 | $ 78.68 |
| 000301191 | $ 20.00 |
| 000301223 | $ 20.32 |
| 000301225 | $ 40.66 |
| 000301235 | $ 20.00 |
| 000301238 | $ 20.00 |
| 000301239 | $ 20.00 |
| 000301242 | $ 29.43 |
| 000301251 | $ 72.02 |
| 000301255 | $ 363.88 |

| | |
|---|---|
| 000301261 | $    231.26 |
| 000301263 | $    191.97 |
| 000301273 | $    20.00 |
| 000301275 | $    62.92 |
| 000301276 | $    20.00 |
| 000301283 | $    835.94 |
| 000301284 | $    20.00 |
| 000301285 | $    46.92 |
| 000301287 | $    168.34 |
| 000301290 | $    20.00 |
| 000301292 | $    456.23 |
| 000301293 | $    77.24 |
| 000301295 | $    26.65 |
| 000301297 | $    21.23 |
| 000301298 | $    20.00 |
| 000301300 | $    37.54 |
| 000301307 | $    394.95 |
| 000301309 | $    22.04 |
| 000301311 | $    280.09 |
| 000301313 | $    20.00 |
| 000301325 | $    446.43 |
| 000301326 | $    20.00 |
| 000301327 | $    26.97 |
| 000301328 | $    20.00 |
| 000301329 | $    2,000.29 |
| 000301334 | $    37.30 |
| 000301335 | $    28.85 |
| 000301343 | $    20.00 |
| 000301344 | $    104.51 |
| 000301345 | $    184.90 |
| 000301355 | $    32.52 |
| 000301356 | $    743.85 |
| 000301357 | $    33.17 |
| 000301360 | $    20.00 |
| 000301361 | $    24.98 |
| 000301362 | $    20.00 |
| 000301363 | $    172.19 |
| 000301367 | $    20.00 |
| 000301368 | $    20.00 |
| 000301372 | $    21.26 |
| 000301373 | $    33.77 |

| | |
|---|---|
| 000301379 | $ 24.52 |
| 000301391 | $ 35.32 |
| 000301394 | $ 250.22 |
| 000301408 | $ 558.04 |
| 000301409 | $ 20.00 |
| 000301410 | $ 20.00 |
| 000301414 | $ 250.11 |
| 000301415 | $ 20.00 |
| 000301417 | $ 53.22 |
| 000301422 | $ 296.99 |
| 000301424 | $ 20.00 |
| 000301425 | $ 20.00 |
| 000301427 | $ 430.58 |
| 000301431 | $ 62.23 |
| 000301432 | $ 20.00 |
| 000301433 | $ 138.55 |
| 000301434 | $ 38.41 |
| 000301435 | $ 21.90 |
| 000301436 | $ 20.00 |
| 000301438 | $ 1,574.39 |
| 000301440 | $ 20.00 |
| 000301442 | $ 20.00 |
| 000301443 | $ 3,035.51 |
| 000301445 | $ 26.46 |
| 000301446 | $ 20.00 |
| 000301447 | $ 20.00 |
| 000301448 | $ 20.00 |
| 000301450 | $ 52.92 |
| 000301452 | $ 128.71 |
| 000301455 | $ 20.00 |
| 000301457 | $ 96.29 |
| 000301460 | $ 72.97 |
| 000301462 | $ 109.10 |
| 000301464 | $ 20.00 |
| 000301466 | $ 170.87 |
| 000301467 | $ 746.65 |
| 000301468 | $ 942.91 |
| 000301470 | $ 79.56 |
| 000301471 | $ 20.00 |
| 000301472 | $ 33.26 |
| 000301473 | $ 25.73 |

| | |
|---|---|
| 000301474 | $ 20.00 |
| 000301475 | $ 325.56 |
| 000301476 | $ 929.89 |
| 000301477 | $ 20.00 |
| 000301478 | $ 20.00 |
| 000301479 | $ 38.94 |
| 000301480 | $ 22.71 |
| 000301481 | $ 54.62 |
| 000301482 | $ 20.00 |
| 000301483 | $ 20.00 |
| 000301484 | $ 22.58 |
| 000301485 | $ 20.00 |
| 000301487 | $ 169.76 |
| 000301488 | $ 20.00 |
| 000301489 | $ 22.58 |
| 000301490 | $ 39.82 |
| 000301491 | $ 111.32 |
| 000301492 | $ 20.00 |
| 000301493 | $ 49.17 |
| 000301494 | $ 71.96 |
| 000301495 | $ 20.00 |
| 000301496 | $ 23.90 |
| 000301498 | $ 47.92 |
| 000301499 | $ 20.00 |
| 000301500 | $ 20.00 |
| 000301501 | $ 292.74 |
| 000301502 | $ 20.00 |
| 000301503 | $ 20.00 |
| 000301505 | $ 20.00 |
| 000301506 | $ 20.00 |
| 000301507 | $ 20.00 |
| 000301508 | $ 85.20 |
| 000301509 | $ 20.00 |
| 000301510 | $ 190.00 |
| 000301511 | $ 20.00 |
| 000301512 | $ 20.00 |
| 000301513 | $ 20.00 |
| 000301514 | $ 20.00 |
| 000301515 | $ 110.44 |
| 000301516 | $ 20.00 |
| 000301517 | $ 20.00 |

| | |
|---|---|
| 000301518 | $ 20.00 |
| 000301520 | $ 516.96 |
| 000301521 | $ 20.00 |
| 000301522 | $ 20.00 |
| 000301523 | $ 20.00 |
| 000301524 | $ 20.00 |
| 000301525 | $ 20.00 |
| 000301526 | $ 20.00 |
| 000301527 | $ 479.05 |
| 000301529 | $ 20.00 |
| 000301530 | $ 119.60 |
| 000301531 | $ 130.35 |
| 000301532 | $ 20.00 |
| 000301533 | $ 20.00 |
| 000301534 | $ 80.54 |
| 000301535 | $ 20.00 |
| 000301536 | $ 107.83 |
| 000301537 | $ 20.00 |
| 000301538 | $ 20.00 |
| 000301539 | $ 20.00 |
| 000301540 | $ 20.00 |
| 000301541 | $ 20.00 |
| 000301543 | $ 20.00 |
| 000301544 | $ 20.00 |
| 000301545 | $ 20.00 |
| 000301546 | $ 502.34 |
| 000301547 | $ 20.00 |
| 000301548 | $ 20.00 |
| 000301549 | $ 20.00 |
| 000301550 | $ 55.20 |
| 000301551 | $ 20.00 |
| 000301552 | $ 43.29 |
| 000301553 | $ 20.00 |
| 000301554 | $ 20.00 |
| 000301555 | $ 20.00 |
| 000301556 | $ 20.00 |
| 000301557 | $ 20.00 |
| 000301558 | $ 20.00 |
| 000301559 | $ 31.54 |
| 000301560 | $ 20.00 |
| 000301561 | $ 20.00 |

| | |
|---|---|
| 000301562 | $ 23.15 |
| 000301563 | $ 285.19 |
| 000301564 | $ 20.00 |
| 000301565 | $ 35.16 |
| 000301566 | $ 20.00 |
| 000301567 | $ 20.00 |
| 000301568 | $ 20.00 |
| 000301570 | $ 134.84 |
| 000301571 | $ 114.56 |
| 000301572 | $ 20.00 |
| 000301573 | $ 22.55 |
| 000301574 | $ 56.89 |
| 000301575 | $ 20.00 |
| 000301576 | $ 20.00 |
| 000301577 | $ 20.00 |
| 000301578 | $ 20.00 |
| 000301579 | $ 20.00 |
| 000301586 | $ 20.00 |
| 000301587 | $ 20.00 |
| 000301588 | $ 20.00 |
| 000301589 | $ 20.00 |
| 000301590 | $ 20.00 |
| 000301591 | $ 121.45 |
| 000301592 | $ 223.13 |
| 000301593 | $ 20.00 |
| 000301594 | $ 20.00 |
| 000301595 | $ 20.00 |
| 000301596 | $ 20.00 |
| 000301597 | $ 20.00 |
| 000301598 | $ 20.00 |
| 000301599 | $ 20.00 |
| 000301600 | $ 246.59 |
| 000301601 | $ 24.26 |
| 000301603 | $ 20.00 |
| 000301604 | $ 20.00 |
| 000301605 | $ 20.00 |
| 000301606 | $ 20.00 |
| 000301607 | $ 20.00 |
| 000301608 | $ 20.00 |
| 000301609 | $ 20.00 |
| 000301610 | $ 20.00 |

| | |
|---|---|
| 000301611 | $ 20.00 |
| 000301612 | $ 20.00 |
| 000301613 | $ 20.00 |
| 000301614 | $ 26.08 |
| 000301615 | $ 20.00 |
| 000301616 | $ 20.00 |
| 000301617 | $ 20.00 |
| 000301618 | $ 20.00 |
| 000301619 | $ 20.00 |
| 000301620 | $ 20.00 |
| 000301621 | $ 20.00 |
| 000301622 | $ 20.00 |
| 000301623 | $ 20.00 |
| 000301624 | $ 20.00 |
| 000301625 | $ 20.00 |
| 000301626 | $ 20.00 |
| 000301627 | $ 20.00 |
| 000301628 | $ 20.00 |
| **TOTAL NET SETTLEMENT AMOUNT** | **$ 41,000.00** |

**EXHIBIT B**

**THIS IS A COURT-APPROVED NOTICE**
**\*\*\*THIS IS NOT AN ADVERTISEMENT FROM A LAWYER\*\*\***

*Tefft v. Integritus Healthcare, LLC f/k/a Berkshire Healthcare Systems, Inc.*,
**Case No. 3:23-CV-30037-MGM, in the United States District Court**
**for the District of Massachusetts**

**PLEASE READ THIS NOTICE CAREFULLY,**
**YOUR LEGAL RIGHTS WILL BE AFFECTED.**

---

**NOTICE OF CONFIDENTIAL SETTLEMENT FOR [INSERT NAME]**
**IN THE GROSS AMOUNT OF $[INSERT AMOUNT]**

---

The class and collective action lawsuit titled Tefft v. Integritus Healthcare, LLC f/k/a Berkshire Healthcare Systems, Inc., Case No. 3:23-CV-30037-MGM, which is pending in the United States District Court for the District of Massachusetts seeks unpaid overtime wages (the "Lawsuit). The lawsuit has reached a settlement and you are entitled to participate in this settlement if you so choose.

Under the settlement, you are entitled to receive pay in the amount of $[INSERT AMOUNT], less applicable taxes and withholdings. This letter summarizes the terms of the underlying settlement agreement, explains your rights under the settlement agreement, and informs you what you need to do in order to claim your settlement proceeds.

Please read this Notice carefully.

| 1. | Why are you getting this Notice? |
|---|---|

You are receiving this Notice because you were identified as a current or former employee that worked at Charlene Manor Extended Care Facility ("Charlene Manor"), an Integritus affiliate, within the three years prior to the filing of this Lawsuit, on April 3, 2023.

This Lawsuit has been settled and that settlement has been approved by a court as "fair and reasonable." This Notice informs you of the steps you must take if you wish to claim your settlement proceeds.

| 2. | What is this Lawsuit about? |
|---|---|

Under federal law, certain employees are entitled to overtime pay for hours worked over 40 in a week at a rate of 1.5 times their "regular rate of pay." This Lawsuit challenged the way that Charlene Manor determined the "regular rate" for purposes of calculating overtime. In the Lawsuit, the Plaintiff alleged that Charlene Manor failed to include certain categories of

compensation when calculating the "regular rate," thereby under-calculating the overtime rates for its workers at Charlene Manor.

Integritus disagrees with Plaintiff's legal claims and contends that compensation policies for employees who worked at Charlene Manor comply with the law.

Here, the court *did not* decide who was right *or* who would win the lawsuit. By reaching a settlement, the parties reached a resolution of their disputes and all parties avoided the costs associated with further litigation and the potential risk of losing the lawsuit.

### 3.    Why was there a settlement?

The settlement is a compromise. The settlement allows the parties to avoid the costs and risks of further litigation and appeals and it provides money to you and others without significant delay. In reaching a settlement, Integritus denies that it and/or Charlene Manor violated any laws and states that it entered into the settlement agreement in order to amicably resolve this dispute on mutually agreeable terms.

### 4.    What are the settlement details?

A maximum total sum of up to $95,000.00 will be paid by Integritus to settle this matter. The parties requested the Court approve payment from this fund for individual settlement payments, attorneys' fees, costs, and expenses, and a service payment to the plaintiff, Tefft.

To determine the amounts owed to each individual per the terms of the settlement, Integritus provided the dates of employment and payroll data for each current and former employee of Charlene Manor within the period of time three years prior to the filing of the Lawsuit. The amounts owed to each individual  are based on their proportionate share of the total settlement amount, which was calculated based on each individual's rate of pay and the number of weeks they worked at Charlene Manor.

Your settlement proceeds will be apportioned as 50% as back wages, which will be subject to payroll taxes and other withholdings, and 50% as "liquidated damages" for which you will need to report on an IRS Form 1099.

### 5.    How do I participate in the settlement?

Enclosed in this letter is your settlement check. In order to participate in the settlement and claim your settlement funds, you must cash, deposit, negotiate, or endorse the settlement check by no later than [**120 days after distribution**].

If you do not wish to participate in the settlement, you do not need to do anything. You are not required to cash, deposit, negotiate, or endorse your check and you may do nothing in response to this Notice.  If you do not cash, deposit, negotiate, or endorse your settlement check, you will not be bound by the terms of the settlement agreement.

**Neither Integritus nor any other Released Party will take any retaliatory action against you for participating in this lawsuit and accepting a settlement payment or refusing to accept a settlement payment.**

By executing and cashing the settlement checks (either one or both), you will be acknowledging that you are represented by Josephson Dunlap, LLP and Bruckner Burch, PLLC ("Class Counsel"), and that you will be bound by the terms of the settlement agreement. You will not have to pay any money to Class Counsel to participate in the settlement.

| 6. | What do I give up by participating in the settlement? |
|---|---|

If you cash, deposit, negotiate, or endorse your settlement check to participate in the settlement, you are agreeing to release and forever discharge Integritus and all of its respective owners, officers, agents, employees, parent corporations, subsidiaries, affiliates, individual owners or shareholders, clients and customers, as well as the owners, officers, agents, employees, parent corporations, subsidiaries, and affiliates of Integritus's clients and customers, including clients utilizing Plaintiff Tefft from any and all wage and hour claims that were asserted in the Lawsuit or could have been asserted based on the facts alleged in the Lawsuit ("Released Parties") that arose before [FINAL EFFECTIVE DATE]. You would be releasing these claims in exchange for your settlement payment.

By cashing, depositing, negotiating, or endorsing the settlement check, you represent and warrant that you have not assigned, transferred, or sold, or purportedly assigned, transferred, or sold to any person or entity any of the claims you are releasing by agreeing to participate in this settlement.

By cashing, depositing, negotiating, or endorsing your settlement check your settlement checks, you also agree to abide by the confidentiality provision in the settlement agreement: You will be required to keep the terms and existence of the settlement, and any amounts that you receive as part of the settlement, confidential except for required tax reporting purposes.

If you currently have a pending legal claim or lawsuit against the Released Parties, other than this case, or if you anticipate filing a future legal claim or lawsuit based on events that have already taken place, you should promptly consult with your attorney about this settlement and the impact this release may have on your current or anticipated legal claims or lawsuit.

If you do not participate in the settlement, then you will not release or discharge any claims against Integritus or any Released Party that you may have.

| 7. | Who are the attorneys for the Plaintiff in this case? |
|---|---|

The attorneys in this case for Plaintiff are Josephson Dunlap, LLP and Bruckner Burch, PLLC. Their contact information is as follows:

Michael A. Josephson                     Richard J. (Rex) Burch
Andrew W. Dunlap                         **BRUCKNER BURCH PLLC**
William M. Hogg                          11 Greenway Plaza, Ste. 3025

**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Ste. 3050
Houston, Texas 77046
Phone: 713.352.1100
Fax: 713.352.3300
E-mail: info@mybackwages.com

Houston, Texas 77046
Phone: 713.877.8788
Fax: 713.877.8065
Email:
frontdesk@brucknerburch.com

Feel free to contact these attorneys about any questions you may have with the settlement.

This letter summarizes the most important aspects of the settlement. You may obtain a copy of the entire settlement agreement as well as the underlying Court pleadings by calling the attorneys listed above.

**You should <u>not</u> contact the Court to discuss this matter.**